Bigger, J.
This case has been submitted to the court upon an agreed statement of facts. The plaintiff, the state of Ohio, seeks to obtain an injunction restraining the defendant corporation from erecting an embankment upon its right of way across a certain tract of land located in this county and belonging to the state of Ohio, and known as “the Central Asylum piunping station tract,” and from.the agreed statement it appears that the state is the owner of this tract of land, containing a little less than two acres and lying upon the bank of the Scioto river, which is now and has been for many years used as a site for a waterworks to supply water to the Central Asylum or State Hospital, and to the Institution for Feeble-Minded Youth; that on the 25th day of April,. 1893, the Legislature of the state adopted a joint resolution, found in 90 O. L., page 386, which in substance provided that on the payment into the state treasury by the defendant corporation of such an amount of money as might be agreed upon by and between the canal commissioners of Ohio and the officers of the railway company, the governor was authorized and required to grant by deed to the rail *235 way company and its assigns, a right of way for said railway over said tract of land, said right of way to be fifty feet in width and to be defined' by a certificate and description to be made by the canal commissioners. It was also provided that the grant was to be subject to the consent of the trustees of the Central Insane Asylum. It was further provided that the boundary line of the ground on the side next to the Scioto river should be defined by courses and distances so that a strip should be reserved to and owned by the state next to the river in order that no riparian rights of the state in the Scioto river may be conveyed or surrendered by the grant of the right of way, and it was provided that the deed should define the right of way by metes and bounds and courses and distances and should reserve all the riparian rights in the river to the state; and further that there was to be a reservation to the state of a right of way at such point as might be determined by the trustees of the asylum to. cross the tracks and grounds of the railroad company, for the purpose of constructing any other railway or switch' thereto; and provided further that the state should have the right to lay and maintain water pipes across the said right of way.
In pursuance of the provisions of this resolution it appears that the canal commissioners, by and with the written consent of the trustees of the Central Insane Asylum, entered into a contract with the defendant for such right of -$ay, which contract was evidenced by and embodied in a deed from William McKinley, then governor of Ohio, to the defendant company, which deed has been lost, but a true copy of which is set out in the agreed statement. And it is agreed that the conditions embodied in the conveyance and contract by the canal commissioners were prescribed by the trustees of the Central Insane Asylum. One of these conditions was that the track of the defendant company across this strip of land should be built upon trestling so as to reserve all riparian rights of the plaintiff: and to enable it at any time to make additional’ arrangements necessary to perfect or enjoy the water supply, and at all times to keep the same open and in such condition that the *236 state may have access to the lands under such railway and the sites adjacent thereto necessary to maintain, repair or enjoy the said water supply, and it was agreed that the railway company should so construct its railway upon the land that no structure then existing in connection with the waterworks or that it might in the future be found necessary to construct •should in any way be interfered with or obstructed. And the railway company agreed to build a tight floor to its tracks across the land in question so as to prevent dirt and filth from being dropped' upon the land. The canal commissioners fixed the sum to be paid by the defendant for the right of way at seven hundred and eighty dollars, which was paid by the defendant; that in pursuance of the contract the defendant entered into possession of the right of way and continued thereafter to operate its road across this tract of land in accordance with the terms and conditions of the contract; that on the 27th day of April, 1899, the defendant submitted' a proposition to the board of trustees of the Central Insane Asylum by the terms of which the defendant offered to build a switch from its track to the pumping stations, and do certain other things, upon the condition that the board of trustees would grant to the defendant the right to make a fill across the land in question, instead of a trestle, and this proposition was accepted by the said board of trustees. Thereafter the defendant entered upon the work of making the improvement which it had agred to make in consideration of being permitted to make a fill in place of the trestle, and expended in that work the sum of five hundred and ninety-seven dollars and fifty-six cents, when it was stopped by a temporary injunction, issued in this case, restraining it from further carrying out the terms of the contract between the defendant and .the board of trustees of the insane asylum. The use which the state has made and is making of the tract of land in question is then set out at length, showing that in addition to the pumping station there is a large well or cistern and that the space between the pumping house and the river is largely occupied by subterranean caverns, passageways, tunnels, filter-beds and water- *237 mains, used in connection with the pumping station. It was then further agreed that on April 20, 1904, the board of trustees of the asylum adopted a resolution rescinding their action of April 27, 1899, authorizing the defendant to make a fill across -the track instead of a trestle.
The decision of this case turns upon the question of the power or authority vested by the Legislature in the officers delegated to enter into this contract. The joint resolution authorized the canal commission to grant the right of way subject to the written consent of the trustees of the Central Insane Asylum. The resolution provided that a strip of land should be reserved by the terms of the conveyance between the track and the Scioto River in order that no riparian rights' of the state may be conveyed or surrendered by the grant of the right of way and that the deed should define the right of way by metes and bounds and courses and distances and should reserve all riparian rights in the Scioto river to the state of Ohio. The state’s claim is that by the terms of this joint resolution the board of trustees of the Central Insane Asylum were not vested with any continuing authority or power with reference to the subject-matter of this grant and conveyance, but that the power of the board of trustees was exhausted when, they had given their consent to the grant of the right of way.
It is a well established principle of law that such public officers have only such powers as are expressly delegated to them, or necessarily implied from the express powers delegated. Whatever rights or powers these agents,, delegated by the state to enter into this contract, possessed must be derived from the resolution itself. It seems to me a consideration of the terms of this resolution, and the nature of the power conferred upon the board of trustees by the resolution, leads irresistibly to the conclusion that the extent of the authority of the board was to consent or withhold consent to the proposed contract, but that once having consented, the authority or power conferred was funchis officio. It seems to me it would be difficult to conceive of a clearer instance of the application of power to perform an act, single in itself and, in its nature, and *238 fimctus officio by the single exercise thereof, than the power conferred. These officers were to execute a contract, evidenced and embodied in a deed to be signed by the governor. No clearer case of a power exhausted by a single exercise could well be conceived. When the contract was made and the deed executed and delivered, their powers and duties were ended. From the very nature of things the power was exhausted. They were not to make any further grants, nor were they authorized to rescind or modify the action which they were authorized to take. It seems entirely clear to me that after the contract was made, and the consent of the board of trustees given, that the board had no further power in the premises, and that it was entirely without authority to make the subsequent contract of April 27th, 1899, and that such attempted exercise of power by said boardl conferred no rights upon the defendant.
But ft is argued by counsel for the defendant corporation that the state’s position in this matter is untenable because no authority or power was granted to the board of trustees or any of the- officers delegated to make this contract to impose any other conditions than those provided by.the resolution, and that as the resolution did not contain the condition that the defendant company should construct its track on a trestle across this tract of land, that such condition embodied in the contract or deed of conveyance was null and void and of no effect. I can not accept this view of the matter. Attention is called to the statement in the agreed statement that the conditions embodied ip the conveyance were prescribed by the trustees of the asylum, and it is said that they had no such power. But it is also said that the conditions were embodied in the contract by the canal commissioners. The canal commissioners had a right to receive suggestions as to the form of the contract from any source they saw fit. True they were not bound to adopt them, but when they adopted them they necessarily made them their own and a part of their contract. But while the board of trustees was not a party signatory to the contract, yet the board was in reality a party to this contract- as much as the canal commissiqners. It could only be made by obtaining *239 tbe consent in writing of the board to the grant. This implies upon the part of the board the exercise of discretion in consenting or refusing to consent to the terms of. the grant. The resolution clearly does repose discretion in both the canal commissioners and the board of trustees of the asylum. It is manifest from the language of the joint resolution that it does not purport.to contain in detail all the terms and conditions of the contract to be entered into-. To some extent this was left to the discretion of the officers entrusted with this work, and the canal commissioners were entrusted with the duty bf making a survey to be defined by metes and bounds. It clearly reposed in both boards the duty and responsibility of so framing the- contract or conveyance as to preserve the riparian rights of the state in the Scioto river.
The decisions of the Supreme Court of this state have established the right of a riparian owner to- make such use of the waters of the stream as is being here made by the state. I think it was not only the right and duty of the canal commissioners, but the right and duty of the board of trustees of the insane asylum, to see to it .that the riparian rights of the state were guarded, and it was in pursuance of this right and duty that the suggestions were made by the trustees as to the conditions to be embodied in the contract so as to protect the riparian rights of the state.
It seems to me there is no escape from the conclusion that it was manifestly the legislative intention in inserting this requirement, that the grant could only be made with the consent of the board of trustees, that this- would be an additional safeguard against the danger -of the grant being made so broad as to relinquish some of the state’s rights- as a riparian owner, in which rights the insane asylum was especially interested. I am of. opinion that there is no grant of legislative power to the canal commission or to the board of trustees, but a discretion reposed in them, in the exercise of which they were acting judicially, and that having exercised the power, their power and authority ended. I have therefore concluded that the act of the board of trustees of April 27th, 1899, in attempting to *240 rescind one of the terms and conditions embodied in the contract, was beyond the scope of their authority, and that the act was null and void and conferred no rights upon the defendant corporation; and that therefore the state is entitled to a permanent injunction restraining the defendant company from making the fill.
Q. B. Lane, for plaintiff.
B. L. Bwrgar, for defendant.
Furthermore, I do not think if the power resided in the board of trustees that it could be done without the consent of the canal commission.
An exception may be noted.